TERRITORY OF MONTANA, respondent, *v.* HERMAN P. REUSS, appellant.

5 605
6 226
6 501
10 506

5 605
16 431

CRIMINAL LAW — *Verdict, when will be sustained on appeal.*— In a criminal case, a new trial will be granted if the testimony preponderates against a verdict of conviction. But, upon a mere question of fact, it requires a strong, clear case to authorize the appellate court to set aside such verdict for the reason that the same is not warranted by the evidence.

THE EVIDENCE REVIEWED AND HELD SUFFICIENT to sustain a conviction of an attempt to murder.

*Appeal from Second District, Missoula County.*

ROBINSON & STAPLETON, for appellant.

J. A. JOHNSTON, Attorney-General, for respondent.

WADE, C. J. This is an indictment for an attempt to commit the crime of murder, and is based upon a statute of the territory which provides that every person who shall attempt to commit a public offense, and in such attempt shall do any act towards the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same, upon conviction shall be punished, etc. .

The indictment charges that the defendant, on the 18th day of December, 1882, at the county of Missoula, did unlawfully, wilfully, feloniously, on purpose and with his deliberate, premeditated malice aforethought, attempt to kill and murder one Frank H. Woody, and in said attempt, and towards the commission of said offense, did then and there feloniously, and with his premeditated malice aforethought, deposit and place on the porch of the residence of said Woody, in which the said Woody was at the time living and residing, a certain box, made and constructed of pasteboard, and filled with gunpowder and a large number of leaden bullets, shot and balls, and around which box was wrapped strong cloth, paper and

strong twine, to which box was attached a fuse so as to cause said box to explode, and that the defendant did then and there unlawfully, wilfully, feloniously and with his deliberate and premeditated malice aforethought, ignite and set fire to said fuse, and thereby caused said box, so made and constructed, and placed on said porch, then and there to explode, with the intent then and there and thereby him, the said Woody, unlawfully, feloniously, wilfully, on purpose, and of his deliberate, premeditated malice aforethought, to kill and murder; but that the said Herman P. Reuss did then and there fail in the perpetration of said offense.

There was a verdict of guilty, and judgment thereon; from which, and from an order overruling a motion for a new trial, the defendant appeals to this court, and assigns as error that the testimony is insufficient to warrant the verdict. It is virtually admitted in the argument that the defendant constructed the box or bomb in question; that he placed in it gunpowder and leaden bullets or balls; that he attached thereto a fuse; that he placed the box, so loaded and prepared, upon the porch of the dwelling-house of Woody, and that he ignited and set fire to the fuse, thereby causing the box or bomb to explode. But the defendant contends that this bomb or box, by its explosion, was incapable of doing Woody any injury, and, therefore, that he ought to have been acquitted.

The testimony shows this state of facts: A few days prior to this explosion the defendant and Woody had had a dispute and difficulty about some coal which the defendant was to deliver to third persons, and soon thereafter the defendant had threatened the life of Woody. On the morning of the 18th of December, at about 5 o'clock, Woody was 'awakened by a noise on his front porch, like some one walking there, and in about three minutes thereafter there was a very loud and violent explosion, which awakened the town, sounding,

as some of the witnesses said, like a twelve-pound howitzer. After the explosion Woody got up from his bed, which was situated in the house four or five feet from the front door, opening on to the porch, and found the upper half of the front door, which was partly of glass, crashed or blown in, the porch littered and strewn with what appeared to be the remains of a bombshell, and about seventy shot in the ceiling of the porch.

In a civil case an appellate court will not disturb the verdict, if there is any evidence to support it. In a criminal case a new trial will be granted if the testimony preponderates against the verdict. Hill on New Trials, 365; *Leak* v. *State*, 10 Humph. 144. All presumptions are in favor of the verdict. There is no fault found with the instructions to the jury. We are asked to say that the jury and the judge who tried the case made a mistake in a matter of fact. The judge who tried the case, saw the witnesses, heard them testify, and observed their manner and appearance upon the stand, is in a better position to judge of the weight and effect of the testimony than an appellate court that does not see the witnesses, and has before it only an imperfect report of the testimony. And so, upon a mere question of fact, it requires a strong, clear case to authorize or justify this court in setting aside a verdict for the reason that the same is not warranted by the evidence.

The defendant having deliberately threatened the life of Woody, we cannot say that he did not intend to kill him, and considering the dangerous material with which this box, or bomb, was loaded, the position in which it was placed, and the violence of the explosion, we would not be warranted in declaring that he had employed means insufficient to carry this intention into execution. The noise on the porch, two or three minutes before the explosion, was very likely designed to call Woody to the door. The fuse was so timed as to have given him an opportunity to have reached the door before the explo-

sion, and if he had been in the door at the time, or attempting to put out the fire of the fuse, it is probable that he would have been killed. Certainly, the evidence does not preponderate against such a probability, nor does it suggest a reasonable doubt as to the intent of the defendant, or as to the sufficiency of the means resorted to by him to carry such intent into·execution. Men are presumed to intend what they attempt to do, if they use the means adequate and appropriate to accomplish their purpose. Because the attempt failed for the reason that Woody was behind time in reaching the door, or for that the fuse was too short, we cannot conclude therefrom that the defendant resorted to inadequate or insufficient means to accomplish his declared purpose and intent. The defendant made no mistake as to the means used. His plan seemed to be complete; and the reason why he failed was in his miscalculation as to the time when Woody would arrive upon the scene. He cannot very well ask for a new trial because he made a mistake in this regard.

The judgment is affirmed, with costs.

COBURN, J., DISSENTING. This is an indictment against the defendant for an attempt to murder one Frank H. Woody, by depositing and placing on the porch of the residence of said Woody, in which he was at the time living, a box made of pasteboard, and filled with gunpowder and a large number of leaden bullets, shot and balls, and around which said box was wrapped strong cloth, paper and strong twine, and attached to the box was a fuse to cause it to explode, which the defendant ignited, causing the same to explode on Woody's porch, with the intent to murder him; and that the defendant failed in the perpetration of this crime.

The defendant was tried by a jury, verdict of guilty was found and judgment rendered. There is no exception to the indictment or to any rulings upon the evi-

dence. The only question raised by the appellant is upon the sufficiency of the evidence to warrant a conviction.

The statute provides that "every person who shall attempt to commit a public offense, and in such attempt shall do any act toward the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or interrupted in executing the same, upon conviction thereof, in cases where no provision is made by law for the punishment of such attempt, shall be punished as follows," etc. An attempt has been defined to be the attempt to do a wrongful act, coupled with overt acts toward its commission. There must be an act directly approximating to the commission of the offense; and there must be a physical ability to complete the meditated offense; but an apparent capacity is sufficient. *Regina* v. *Phillips*, 8 Car. & P. 735; *Rex* v. *Eldershaw*, 3 Car. & P. 396; *Reg.* v. *Collins*, Leigh & C. 471; *S. C.* 2 Lead. C. C. 478; 9 Cox, C. C. 49; 1 Wharton C. L. (8th ed.) sec. 184; *Lewis* v. *State*, 35 Ala. 380; *State* v. *Elick*, 7 Jones (N. C.), 68.

In this case the explosive instrument is described in the indictment as a pasteboard box wrapped with strong cloth, paper and twine. Mr. Woody, the person whose life defendant is alleged to have attempted to take, testifies that he found a portion of a paper box on his porch soon after the explosion, and about seventy shot there also; that the effect of the explosion was to break the upper part of the glass front door, which opened on the porch; that the shot indented the ceiling of the porch; the force of the shot being greater there than on the sides of the building. There was a piece of fuse found upon the porch with fragments of the box. This occurred about 5 o'clock in the morning, he being awake at the time, having been awakened by a noise on his front porch resembling a person walking. Within two or three minutes after this he heard the report of an explosion as loud as a twelve-pound cannon. About 6 o'clock he got

up, went out on the porch, and saw the effects: the glass in the front door broken and blown into the hall, the shot and fragments of the box on the porch, and the marks on the ceiling. Charles W. Benry, a witness for the territory, the sheriff, was at Woody's house that morning and saw the fragments of the box or bomb; he took charge of them and kept them in his office. He examined the premises, the porch, on the morning of the explosion; saw the broken door; the glass was smashed. There were just a few dents of shot on the walls and over-heard; there was no appearance of powder burned there on the floor. This is substantially all the evidence as to the effect of the explosion, except that it was heard by three or four witnesses at a distance of a fourth to a half of a mile away.

Mr. Woody says that, at the time of the explosion, he was in his bed-room, just across the hall from the front door, which was broken in the upper part, the glass portion; this hall was about four feet wide between the wall of the bed-room and the front door. There is no evidence that the walls of the hall or of the bed-room were in the slightest degree affected or injured by the explosion. The witness Woody remained in bed almost an hour after the explosion, unconscious that it had taken place on his own porch, and only discovered it upon going out after 6 o'clock in the morning.

What did the defendant intend to do when he did this? Did he intend to murder the witness Woody, or did he intend to injure his house? Do the acts show a design to murder Woody, or to destroy property?

The instrument used might have produced death had it been exploded under Woody's bed, or even in his bed-room; but this was not done or attempted. Two walls intervene between his person and the explosion. Had it been intended to be used as against his person, it would not have been difficult to have projected it through the glass door against the wall of his bed-room. Placed upon

an open porch, the power of such an explosive would be harmless against Woody in his bed.    It was utterly incapable of killing him when it was used, and where it was used, and any man capable of committing a crime, and responsible for his acts, could understand this.    If the use of this explosive was such as that death could not result, then was the crime charged committed, or some other crime?    Were the means used adequate to the purpose, or were they totally inadequate?    Were the means apparently adapted to the end intended?    It would; seem that they were inadequate, and that they were never intended for the purpose set out in the indictment.    A sane man would never attempt to commit murder under the circumstances and in the manner detailed in the evidence of the witnesses for the territory.

This evidence shows, at most, that defendant intended the injury or destruction of a portion of Woody's house, and not to destroy his life.    And that he rather contemplated an act of malicious mischief than of murder, in the use of the means, at the time and place and in the manner disclosed in the evidence.    He attempted no crime against the person of Woody, nor did he do any act towards the commission of such an offense, if the use of the explosive in its place on the porch, and the position of Woody at the time, are considered.    There seems to be no apparent adaptation of the means to the end.    And what reason or justification is there in the law or the facts of the case to consider its use at a different time as against Woody in a different place?    A paper box transformed into an explosive is as apt an instrument of destruction of a building as it is of human life; and a bomb is more frequently used for the former purpose than the latter.    In fact, an explosive is the best instrument for the annihilation of property, but is not the usual or approved weapon to take life.    Bishop says: "When we say that a man attempted to do a thing, we mean that he intended to do specifically it; and pro-

ceeded a certain way in the doing. The intent in the mind covers the thing in full; the act covers it only in part; thus, to constitute murder, the guilty person need not intend to take life, but to constitute an attempt to murder he must so intend."

The question here arises, did the defendant intend to do an act that was impossible? It cannot be said a rational being intends to do that which he knows to be impossible. And the law will not treat him as attempting to do such a thing. It has been well said that, "all being conclusively presumed to understand the law, no man can legally intend what is legally impossible."

A man would never attempt to pick a pocket if he knew there was no money in it; nor to procure a miscarriage if he knew the woman was not pregnant. Did the defendant know that the explosion of the bomb could not destroy Woody's life? If he did, he cannot justly be held guilty of an attempt to murder him.

The evidence shows that the box or bomb was exploded upon Woody's porch at about 5 o'clock in the morning. That at that time Woody was in bed, with two walls intervening between his person and the porch. The evidence does not show that defendant had any knowledge whatever of Woody's house, or that he had ever been in it; that he knew anything of Woody's bed-room, or of the place where he slept, or even that he was in the house at the time of the explosion. The evidence discloses nothing upon these points, and it cannot be presumed that the defendant knew these facts. In the absence of proof that defendant knew where Woody was at the time of the explosion, or what was the structure of the house, can it be said that even the preponderance of the evidence shows that he intended to murder him? And if the defendant knew no more than the evidence discloses as to this event, he only knew that he caused the explosion of a bomb on the porch of a dwelling-house, in ignorance of where Woody slept, of the structure of his

house, and of where he was at the time. The jury may have inferred that the defendant knew where Woody lived, and the construction of his house, and in what room he slept, and where he was at the time of the explosion; but all these essential facts were not before them in evidence. The constituent elements of this crime, as made out in the proof, are: a bomb, composed of paper and twine, filled with powder and balls or bullets, and an explosion upon the porch of a residence; tracks upon the newly fallen snow leading from Woody's house to the defendant's; and threats made by defendant that he would kill Woody, made some days previous to the explosion.

The defendant did not know where his victim was; whether he could be reached by the explosive; what the effect of the explosion would be on the house; whether it would produce death; or, in fine, what the result could possibly be. It was an experiment, at most, to effect an injury upon Woody's property, or to do him some indefinite harm. This is not like the case where a man assaults a woman with the intent to ravish her, but his intent subsides before the rape is committed; or when he is prevented by the flight of the woman; or is alarmed by her outcries, and flees; or is overcome in his effort by her superior force; or where a man attempts to pick a pocket and finds nothing in it, or is caught and prevented while putting his hand in the pocket; or where a man assaults one with intent to rob him when he has no money. In these cases the attempt was to do with a specific intent some act, which, if consummated, would constitute a substantive crime. They are such cases as that the attempt, if successful, constitutes the full offense, and the means employed had some adaptation to secure the intended result, and were appropriate to accomplish the purpose.

In Massachusetts, in *Commonwealth* v. *Jacobs*, 9 Allen, 274–5, the court says: "Whenever the law makes one

step towards the accomplishment of an unlawful object, with the intent or purpose of accomplishing it, criminal, the person taking that step, with that intent or purpose, and himself capable of doing every act on his part to accomplish that object, cannot protect himself from responsibility by showing that, by reason of some fact unknown to him at the time of his criminal attempt, it could not be fully carried into effect in the particular instance."

In addition, "the means employed," says Bishop, "must have some adaptation to accomplish the intended result, for without this element they create no alarm, and the public repose is not threatened. Yet, if the means are apparently adapted, that, in reason and on the better authorities, is sufficient; while there are cases which seem to require, contrary to principle, a real and complete adaptation. Now, can we split hairs here and say that, even to outward appearance, the adaptation of means to the purposed end must in all circumstances be perfect; for thus we should nearly do away with the doctrine of attempt as a practical element in the law. In most cases, the reason why the means employed proved unsuccessful is that, as a looker-on might have seen, there was some defect in the arrangement, or in the tools, or in the steps taken in carrying out the plan, by reason of which the enterprise failed. . . . The necessary intent existing, the act must have some adaptation to accomplish the thing intended. But the adaptation need only be apparent, because the evil to be corrected relates to apparent danger rather than to actual injury sustained. If the thing meant were accomplished, the offense would be a substantial one; but, not being accomplished, the danger, as it appears to outside observation, is the matter indictable under the name 'attempt.'"

It is important that the acts of preparation be not confounded with the attempt itself. In *People* v. *Murray,* 14 Cal. 159, 160, it is held that declarations of an intent to enter into an incestuous marriage, followed by elope-

ment for the purpose, and sending for a magistrate to perform the ceremony, were held not to constitute the indictable attempt. It was even laid down that, for the attempt to be punishable, it must have proceeded to some act which would end in the substantive offense, but for circumstances independent of the will of the parties. In this case the rule would require them to be standing before the magistrate, about to begin the marriage ceremony. The court say: "Between preparation for the attempt, and attempt itself, there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offense; the attempt is the direct movement towards the commission after the preparations are made. To illustrate: A party may purchase and load a gun with the declared intention to shoot his neighbor; but until some movement is made to use the weapon upon the person of his intended victim, there is only preparation and not an attempt."

In the case at bar, there was partial preparation; a step was taken; was it a step towards murder? Was the preparation adapted to that consummation? Was the step taken toward malicious mischief? Did the preparation point that way? The threats and the loading the bomb with bullets has the undoubted appearance of preparation for personal violence against the person of Woody; so had the declarations of defendant in the case of incestuous marriage, the elopement and the sending for a magistrate to perform the ceremony. Did the attempt proceed to some act which would end in the substantive offense, but for circumstances outside of the will of the defendant? Did the defendant attempt to use the bomb upon the person of Woody? Was it placed in such a position as to injure his person, or was it not placed by the will of the defendant where it could only injure his property? And if he had prepared it for the destruction of the life of Woody, do not the facts proven

show that he abandoned that purpose and caused the explosion for another purpose? That he did not then intend to commit murder, but to destroy the property of Woody?

If a man intends to commit one crime and perpetrates another, he is held guilty of the latter; for what he has done, and not for what he designed. It has been said that "anciently, the will was reputed for the deed, in matters of felony, though it is not so now." See Bishop on Cr. Law, vol. 1, secs. 326, 327; *State* v. *Ruhl,* 8 Iowa, 447.

In this case a statute of Iowa provided that, "if any person take or entice away an unmarried female, under the age of fifteen years, from her father or mother, guardian or other person having the legal charge of her person, without their consent, he shall, upon conviction," etc. And a defendant on trial under this statute, where the enticement was for the purpose of defilement, offered to show in his defense that, though the girl was truly under the age of fifteen years, she represented herself to him as being older, and he believed the representation, therefore he did not have the requisite criminal intent. But the court rejected the evidence, and it was held that this rejection was right, in the following language: "If the defendant enticed the female away for the purpose of defilement or prostitution, there existed a criminal intent, even though she was over the age of fifteen. The testimony offered was, therefore, irrelevant; for the only effect of it would have been to show that he intended one wrong, and, by mistake, committed another. The wrongful intent to do one act is only transported to the other."

In *Rex* v. *Brown,* 1 Leach (4th ed.), 148, it is held "that if, on a sudden quarrel, a blow is aimed at one and accidentally takes effect on another and kills him, this will be manslaughter, the same as if it had fallen on the person intended." So in *Rex* v. *Blackham,* 2 East, P.

C. 711: "If a man assaults a woman to commit rape upon her, not intending to rob her; and she, hoping to redeem her chastity, offers him money which he puts in his pocket, though he did not demand it, this is in law robbery." In Bishop on Cr. Law, sec. 329, vol. 1, it is said "that the intent and the act, which constitute the sum, need not be the natural or usual accompaniments of each other, provided they, in fact, accompany each other in the particular instance."

A result, unintended and unexpected, of a criminal nature, may take place, and this be the act for which the perpetrator may be punished, and not the act which was not consummated and toward the accomplishment of which he was vainly endeavoring to move. The evil intent which was the impulse to a crime that failed of perpetration attaches itself to another which has been accomplished and may intensify its malignity. That which results from the wicked purpose and the unlawful act of the perpetrator may be a surprise both to himself and to society, but the inexorable hand of justice can reach, and will punish, him in whatever form or attitude his acts and intentions may terminate, whether it be in the thing done or the unsuccessful attempt.

Here, there was preparation, not adequate to produce the death of the victim, except under the most extraordinary circumstances involving the elements of accident. There was possibly a faintly apparent adaptation of the means to the end. There was a motive accompanied by the threats. There was the final act so totally inadequate to accomplish the intended result, so much at variance with the theory that it was an attempt upon human life, so consistent with the theory that the defendant had changed his purpose, if he ever had one, to commit murder, and was only attempting to destroy the property of Woody. It is as if a man had prepared to shoot or poison another, and, changing his purpose, had shot or poisoned his horse. He could not be held guilty

of the attempt to shoot or poison the other, for the reason that his efforts resulted in an opposite direction, and from his acts it is to be presumed that he changed his evil intention to commit murder, to another evil purpose, which was to destroy property. To constitute the crime of which the defendant is accused, his intent must have remained unchanged. And he must have failed in the preparation, or have been prevented or interrupted in its execution. The explosion of the paper box or bomb in the open porch at a distance from the bed-room of Woody, with two walls intervening, cannot be fairly termed to be a failure to accomplish the wicked purpose to murder him, nor can it be said that the defendant was prevented or intercepted in executing the same. In point of fact he was not prevented or intercepted, but finding it to be impossible, changed his purpose with the result as it appears in the evidence.

I, therefore, dissent from the opinion of the court affirming the judgment below, believing that the jury should have found the defendant not guilty of the crime charged, under the evidence.