COMMONWEALTH *vs.* HENRY TOLMAN.

Plymouth.   October 16, 1888. — May 11, 1889.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Attempt to commit Crime — Indictment — Description of Place — " Dam " or. " Dike " — Malice — Justification — Evidence — Exceptions.*

An indictment on the Pub. Sts. c. 210, § 8, for a malicious attempt to injure and destroy a dam situated in a certain town, sufficiently describes its location.

At the trial of such indictment there was evidence that the dam was erected across a river to improve a marsh, under the St. of 1871, c. 303, which required that proceedings therefor should be begun upon the petition of twenty proprietors of the marsh to the Superior Court; and the record of that court showed that it had acted upon what purported to be such a petition. *Held,* in the absence of proof to contradict the record, that no further evidence was necessary to show that the petition was in fact signed and presented by twenty proprietors.

The defendant, who admitted that he made the alleged attempt, offered evidence that he lived near the river, and earned his livelihood by fishing; that before the erection of the dam he had rightfully used the river, which was then navigable, for that purpose; and that because of such erection shoaling had taken place in the river below the dam, which had not been removed, and the river had been rendered unnavigable. The St. of 1871, c. 303, § 4, provided that such shoaling should be removed by the proprietors of the dam, or, on their failure, by public authority, at their expense. The defendant offered to prove that he knew these facts; and that it was a matter of common conversation in the vicinity that the dam was a "public nuisance and that any man had a right to destroy it." *Held,* that the evidence was inadmissible either in justification of the defendant's act or to meet the allegation of malice.

Under a general exception to a charge, the excepting party cannot be allowed afterwards to select particular phrases and found special exceptions thereon.

TWO INDICTMENTS for an attempt to destroy a town way, dam, or bridge. Trial in the Superior Court, before *Brigham,* C. J., who, after a verdict of guilty, reported the case for the determination of this court. The material facts appear in the opinion.

*A. J. Waterman,* Attorney General, & *H. C. Bliss,* First Assistant Attorney General, for the Commonwealth.

*B. W. Harris* & *H. Kingman,* for the defendant.

DEVENS, J.   The defendant was tried and found guilty upon two indictments. The first indictment charged him with wilfully and maliciously attempting to destroy a certain part or portion of a town way legally laid out and established in Marshfield,

the property of the inhabitants thereof, by malicious means therein set forth. A second indictment in its first count alleged similar acts to have been done by the defendant in the attempt and with intent to injure and destroy a certain dam situated in the town of Marshfield, and the property of the inhabitants of Marshfield. The second count of the second indictment alleged the same attempt with the same intent upon the same dam, but averred the property of the dam to be in certain trustees. Upon both of these counts the defendant was convicted. This latter indictment contained a third count for a like attempt to destroy a public bridge; but as upon this the court directed a verdict for the defendant, it need not be here considered. Both indictments in all their counts alleged the failure of the defendant fully to complete his offence by the destruction either wholly or partially of the way or dam.

It is a general principle, that, when a consummated offence is indictable, attempts which, if successful, would have resulted in such offence are also indictable. The acts alleged, if done by the defendant, would have formed a part of the series which would have constituted an actual commission of the offence if it had been fully completed. Pub. Sts. c. 210, § 8. Many of the objections and exceptions taken apply to all the counts upon which he was convicted, but, for reasons which will hereafter appear, we have preferred to consider only those which relate to his conviction on the second count of the second indictment.

This count alleged the property in the dam to be in certain trustees named, and to this allegation the defendant made no objection, either by motion to quash, exception, request for ruling, or otherwise. He filed a motion to quash, applicable to this count, upon the ground that the location and situation were not described with proper accuracy. The dam was alleged to be situated in the town of Marshfield, and this was sufficient. In indictments for keeping or maintaining as a nuisance a particular building, it has often been held that its location need not be specifically described, and that it is sufficient if it is alleged to be in a certain town named. *Commonwealth* v. *Logan*, 12 Gray, 136. *Commonwealth* v. *Welsh*, 1 Allen, 1. *Commonwealth* v. *Gallagher*, 1 Allen, 592. So in an indictment for

obstructing a way, and thus committing a nuisance, it was held that it was sufficiently described by averring it to be in a particular town, and also, in an indictment for not repairing a highway, that it was not necessary to set out the termini of such highway. *Commonwealth* v. *Hall,* 15 Mass. 240. *Commonwealth* v. *Newbury,* 2 Pick. 51. The motion to quash was therefore rightfully overruled.

The St. of 1871, c. 303, may, so far as is necessary for the questions we are discussing, be briefly summarized. The proprietors of Green Harbor Marsh in Marshfield were authorized, in § 1, to erect a dam and dikes at a point specified, for the purpose of draining the marsh, and preventing the influx of the sea. These improvements were to be made under the direction of commissioners, to be appointed in the manner provided in the Gen. Sts. c. 148 (Pub. Sts. c. 189). Twenty of the proprietors were required to petition the Superior Court for the appointment of such commissioners, and full jurisdiction was given to it of all the proceedings, as provided in the Gen. Sts. c. 148. Section 2 authorized the proprietors to manage their affairs as the proprietors of general fields. Section 3 provided that the county commissioners of Plymouth County might contract with commissioners appointed by the Superior Court for the erection of a highway, bridge, and dam, without a draw, at the joint expense of the county and the proprietors. Section 4, which is the one of most importance in the case at bar, provided that, if shoaling should take place in the channel of Green Harbor River below the dam and dikes, said shoaling should be removed by the proprietors, under the direction and to the acceptance of the harbor commissioners; and that, if the proprietors should fail to remove said obstructions for six months after notice, the commissioners should cause the obstructions to be removed at the expense of the proprietors, who were made liable to the Commonwealth for the expenditure thus incurred, in an action of contract.

There was evidence that, by virtue of proceedings in the Superior Court, a dike or dam was built across Green Harbor River, which was completed in 1872, and was so constructed, with a sluiceway and gates, as to prevent the flow of the salt water on to the marsh above the dike, and to permit the fresh

water to flow through the same when the tide turned and was ebbing, or to retain the fresh water to irrigate the meadows above, although in fact it was not used for the last purpose. The dam or dike was constructed across a part of the river which was seventy feet wide at high water, and then navigable for small vessels, and entirely obstructed navigation above the same. There was further evidence, that the defendant had caused to be prepared a large tin can containing fifty-two pounds of Atlas powder or dynamite; that there were inserted therein two time fuses connected with the cartridges into which the powder had been divided; and that with this can the defendant went upon the dam in the night-time, near the sluiceway, with the intention of exploding the contents of the can on or under the dike, and of destroying the same, when he was arrested; and it was admitted at the trial that he was in the act of attempting to blow up the dike.

The defendant contends that, upon the evidence in the case, the Commonwealth failed to prove that the structure which he was charged with attempting to destroy was a dam within the meaning of the Pub. Sts. c. 203, § 85, and that an instruction to this effect should have been given. No argument has been founded, nor could any properly have been founded, upon any distinction between the words " dam " and " dike." This contention rests on the position that the Commonwealth — which had shown that the Superior Court had acted upon what purported to be the petition of twenty proprietors of the marsh lands, had heard this petition, and had passed upon and decided it by appointing commissioners, and ordering them to erect the dam, which had been done, and a report of their doings made and accepted — must show further that the petition was in fact signed and presented by twenty proprietors; and that until this was done, no part of the record of the proceedings was admissible. The Superior Court is a court of general jurisdiction, upon which was conferred, as may be presumed from its public importance, a jurisdiction in regard to the special proceedings for the erection of this dam. It was to act upon the petition of twenty proprietors, and it was competent to decide for itself whether it had been thus addressed. By its action its record shows that it had decided that the proceedings had been

thus initiated, and no further evidence was necessary. Whether its adjudication on this point would not have been conclusive had the defendant sought by any evidence to controvert it, we have no occasion now to decide. *Commonwealth* v. *Carr*, 143 Mass. 84.

The defendant further relied upon a justification of the acts done by him, and offered evidence that " since the construction and completion of the dike shoaling had taken place in Green Harbor River, and its approaches below the dike, above the level of mean low water, to such an extent as to practically make Green Harbor River and its approaches unnavigable; that such shoaling was caused by the dike; that prior to the completion of the dike Green Harbor River and its approaches were navigable, and for more than a mile above the dike; that the proprietors of Green Harbor Marsh were duly notified by the harbor commissioners, by notice dated September 13, 1876, to remove such shoaling; that no part of such shoaling had at the time of the alleged offence been removed by said proprietors, or any other party; that such shoaling is, because of the existence of such dike, constantly increasing; that the defendant was an inhabitant and resident of Green Harbor village, knew all of the facts stated in the foregoing offer, earned his livelihood by carrying on the business of fishing, and for this purpose had for many years prior to the erection of the dike used, and had the right to use, Green Harbor River and its approaches." The presiding judge declined to admit the evidence offered as a justification of the acts of the defendant, and ruled that " the act of the Legislature and the proceedings thereon contemplated as one of the results of the erection of the dike a shoaling of the river, and that the shoaling of the river and the purpose of the Legislature to open certain benefits for agricultural purposes in one direction, to the injury of certain other public interests in the way of navigation, gave no right to the parties who had interest in navigation to defeat the purpose of the Legislature in the matter of this provision for agriculture."

The contention of the defendant at the trial and in the argument of the case at bar is, that " the act of 1871, c. 303, when accepted and acted upon by the proprietors of Green Harbor Marsh, became an executed contract between such proprietors

and the Commonwealth, by the terms of which both parties were bound; and the proprietors upon proper notice were bound to remove any and all shoaling above the level of mean low water in Green Harbor River and its approaches caused by such dike, and if they did not remove such shoaling forfeited the right to keep and maintain such structure, and said dike became and was a nuisance; and any person having the right to use or navigate Green Harbor River or its approaches would have a right to abate such nuisance and remove said dike."

The reasons upon which it has been held that, when a party suffers an immediate injury from an obstruction in the highway, as from a gate erected thereon wrongfully, he may remove it in order to pass, have no application to a case such as the one at bar. The dam had been lawfully erected upon proceedings had under the statute, and had been constructed by the authority of the Legislature, which, anticipating that one of the results might be the shoaling of the river below the dam, had provided a full and adequate remedy against this by imposing upon the proprietors a certain duty in relation thereto, and, in case of a failure on their part for a certain length of time, upon a body of the public authorities, the harbor commissioners, representing the Commonwealth, for whose expenditure the proprietors were afterwards bound to reimburse the Commonwealth. The ground upon which a party may sometimes act in the removal of a nuisance, that in the exercise of his right he cannot wait for the slow processes of law, has here no application.

The injury which the defendant sustained, in being unable to use the stream below, was immediately caused by neglect of the proper precautions for which the statute had provided, and which had resulted in the shoaling of the water. The remedy for this was, not to destroy the structure, but to enforce through the proper authorities the provisions of law by which this injury to navigation below the dam had been anticipated and guarded against. Nor, if we should concede the defendant's proposition that the proprietors would be indictable for a nuisance in failing to remove the shoaling occasioned by this bridge, would it by any means follow that one situated as the defendant claimed to be would be authorized to destroy it. A

corporation which was authorized to maintain a bridge, and to keep it in safe and proper condition for use, might be indicted for failing to keep it in proper repair, but it could not therefore be rightfully destroyed by one who had occasion to pass over it. *Commonwealth* v. *Central Bridge Co.* 12 Cush. 242, 244. Nor is any case presented here such as that of *Arundel* v. *M'Culloch,* 10 Mass. 70, where a bridge, without any authority of law, had been erected across a navigable stream, and it was held that one having occasion to pass with his vessel might lawfully break through the same, doing no more damage than was necessary for his passage.

The structure in the case at bar did not become a wholly unlawful structure because the proprietors had neglected to perform an important but subordinate duty in its management, by the non-performance of which, and not by the dam itself, injury might result to persons situated as was the defendant. The provisions of the statute made to enforce the performance of this duty were ample. Even if the necessity had been immediate on the part of the defendant that the accumulation should be removed, it does not appear, nor was there any evidence, that the destruction of the dam would have enabled him at once to use the stream below the dam or that at the time he had any occasion so to do. He was not then navigating the stream, nor was it shown that the removal of the dam would have removed the shoaling. He sustained no special or peculiar damage different from that of the rest of the community.

While the presiding judge refused to receive the evidence above stated as a justification of the acts of the defendant, he ruled that, under the indictments, any evidence tending to show that the defendant believed that he had a right to do the acts charged was admissible. The defendant, if the facts offered do not constitute a justification, contends that they were admissible as tending to show cause for belief on the part of the defendant that he had a right to destroy the dam, and excepts to the ruling of the judge to receive them for this purpose. This contention is in effect that, if not a justification, such facts may at least afford an excuse for acts of the defendant, and meet the allegation of malice. When the facts offered fail to show that the defendant had any right to destroy the

dam, and when the law must be presumed to be known to him, proof of such facts could have no tendency to show a belief that the law was different, or that his legal rights were different from those which actually existed. The question is, indeed, on this point, as to the state or condition of his mind and his honest belief; but to have this effect, and to be available as evidence on this point, they must be connected with evidence that on such a state of facts he had been advised, and thus honestly believed, that he had a right to destroy the dam, or with other evidence of a similar character. The defendant did not do this, and the evidence was properly rejected in this aspect of the case. Apparently the defendant sought thus to connect it by proof that it was a matter of common conversation in the vicinity of Green Harbor, that the dike " was a public nuisance and that any man had a right to destroy it." But he did not offer evidence of a common or public reputation to this effect, or that he had ever been so advised, or that any similar statement had ever been made to him, or in any conversation in which he participated. This evidence was, therefore, properly rejected.

In the charge of the presiding judge, the nature of the malice which the Commonwealth was required to prove was clearly and fully explained to the jury, and accurately defined. Nor has the defendant insisted on any objection to this as a general statement, although he now excepts to a single remark made by the presiding judge, to the effect that, " when a man is doing something which he thinks he has an honest right to do, he has no occasion for secrecy, he has no occasion for darkness, he has no occasion to hide, for he is acting in the belief that he is doing just what he has a right to do." If this remark is to be construed as anything more than a submission to the jury of the circumstances of the defendant's conduct as bearing on his alleged guilty purpose, or is for any other reason objectionable, the defendant did not at the time take an exception thereto, so that it might, if desired, have been more clearly limited, expressed, or explained. Under a general exception or objection to a charge, one cannot be allowed to select afterwards particular phrases and found special exceptions thereon. *Curry* v. *Porter*, 125 Mass. 94. *McMahon* v. *O'Connor*, 137 Mass. 216. *Wright* v. *Wright*, 139 Mass. 177. Some other exceptions were

taken by the defendant at the trial, but they have not been insisted upon in argument, and, on examining them, we do not deem it necessary to discuss them.

As we are of opinion that the exceptions of the defendant must be overruled so far as the second count of the second indictment is concerned, we have not deemed it necessary to discuss his exceptions so far as they relate solely to the first indictment, or to the first count in the second indictment. All the counts in both indictments are clearly but different descriptions of the same offence by which, if guilty, the defendant has incurred but a single penalty. In the first indictment the allegation is the attempted destruction of a town way, the property of the town of Marshfield; in the first count of the second indictment, of a dam the property of the town of Marshfield. These allegations involve the questions whether a town way had been, or could lawfully have been, laid out over the dam, and if so, whether such way could be described as of the property of Marshfield, and also whether the dam itself could be described as of the property of Marshfield. In the view we have taken of the conviction of the defendant under the second count of the second indictment, these questions are not now of importance in the case at bar, and are hardly more than speculative.

If we assume that all might be decided in favor of the defendant, it would not diminish the penalty to which he is exposed, and to which he may be sentenced by reason of his proper conviction under the second count of the second indictment. Nor if these questions were otherwise decided would it add to his liability. It is, therefore, a sufficient disposition of the case submitted to us by the report to hold that, on the entry of a *nolle prosequi* by the Commonwealth on the first indictment and on the first count of the second indictment, there may be on the second count of the second indictment

*Judgment on the verdict.*