STATE, RESPONDENT, v. RAINS, APPELLANT.

(No. 3,802.)

(Submitted March 15, 1917.   Decided April 2, 1917.)

[164 Pac. 540.]

*Criminal   Law—Murder—Attempt—Information—Insufficiency*
*—Witnesses—Competency—Husband and Wife.*

Attempt to Commit Murder—Insufficient Information.
    1.  Information *held* insufficient to support a judgment of conviction
    under a charge of attempt to commit murder, in that it failed to allege
    some overt act which in the ordinary and likely course of events would
    result in the commission of the crime charged, and went no further
    than to show preparation to commit it.
Same—Witnesses—Competency—Husband and Wife.
    2.  Under amended section 9483, Revised Codes (Laws 1915, Chap.
    111), a wife was competent to testify in a prosecution against her hus-
    band for attempted murder.

*Appeal from District Court, Ravalli County; R. Lee McCul-*
*loch, Judge.,*

CHARLES RAINS was convicted of attempt to murder and ap-
peals.   Reversed and remanded.

*Messrs. Johnson & Tucker*, for Appellant, submitted a brief;
*Mr. Park Smith*, of Counsel, argued the cause orally.

*Mr. J. B. Poindexter*, Attorney General, and *Mr. W. H. Poor-*
*man*, Assistant Attorney General, for Respondent, submitted a
brief; *Mr. Frank Woody*, Assistant Attorney General, argued
the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The principal question presented by these appeals is whether
the information, upon which the appellant was tried and con-
victed of an attempt to commit murder, states facts sufficient
to constitute that offense.   Omitting the formal parts, the
[1]   information is as follows:

"In the District Court of the Fourth Judicial District of the
State of Montana, in and for the County of Ravalli.   *   *   *

Comes E. C. Kurtz, county attorney of said county, and  *  *  *
informs the court: That one Charles Rains, late of the county
of Ravalli, state of Montana, on or about the 15th of October,
1915, at and in the county of Ravalli, in the state of Montana,
did unlawfully, feloniously, and willfully, on purpose, and with
his deliberate premeditated malice aforethought, attempt to kill
and murder one Elizabeth Rains, and in said attempt and toward
the commission of said offense did, then and there, feloniously
and with his premeditated malice aforethought, start to walk to
the home of Elizabeth Rains, in the said county of Ravalli, state
of Montana, and that upon meeting her, the said Elizabeth
Rains, in and upon a private highway a short distance from
her home, did then and there, on purpose and with his deliberate
premeditated malice aforethought, intercept and stop her, and
did strike her in the face, and did compel her to return to her
home with him; that upon the arrival at the home of said
Elizabeth Rains the said Charles Rains did deliberately and
feloniously force her to enter her house, and did enter after her
and lock the door, and take possession of the key to said door,
all of which was done with the deliberate, premeditated, and
felonious intent, then and there, upon the part of him, the said
Charles Rains, to kill and murder the said Elizabeth Rains, he,
the said Charles Rains, being at said time in the possession of
a 38-caliber Iver Johnson revolver, loaded with cartridges con-
taining powder and leaden bullets, and being in possession, at
said time, of a 22-caliber special rifle, loaded with cartridges
containing powder and leaden bullets, and being at said time in
the possession of a bottle containing laudanum, by the use of
all of which he, the said Charles Rains, having then and there
the deliberate, premeditated, and felonious intent to kill and
murder said Elizabeth Rains, did then and there attempt to do
so.   That said Charles Rains did then and there fail in the per-
petration and commission of said offense, and was then and
there prevented in the execution of the same, by the following
facts: The said Charles Rains did take a water-pail and unlock
the door and start to go to a near-by spring for the purpose of

getting a pail of water; that after stepping outside said house
he locked the door from the outside, keeping the key to said
door in his possession; that as soon as he stepped out of the
said door the said Elizabeth Rains opened a window on the
opposite side of said house, through which she escaped to a
near-by neighbor.  All of which is contrary to the form, force,
and effect of the statute in such cases made and provided, and
against the peace and dignity of the state of Montana.''

The appellant's contention is that this document is inadequate
to support the judgment, and we think he is correct.  Our
statute provides: ''An act done with intent to commit a crime,
and tending but failing to effect its commission, is an attempt
to commit that crime.''  (Rev. Codes, sec. 8894.)  And Mr.
Wharton, in his excellent work on Criminal Law (eleventh
edition, section 212), thus enlarges upon this definition: ''An
attempt is an intended apparent unfinished crime.  It must be
intended, since it is of its nature that it should be committed
in order to effect a specific criminal result.  It must be apparent,
since if it be obviously not likely to effect the result at which
it aims (*e. g.,* where a popgun is leveled at a ship, or a witch
is employed to use enchantments), it is not indictable.  It must
be unfinished, as otherwise the indictment would be for the com-
plete crime; but there must be at least some appreciable fragment
of the crime committed, and it must be in such progress that it
will be consummated unless interrupted by circumstances inde-
pendent of the will of the attempter.''  So, too, the more modern
text in 6 R. C. L., page 279, says: ''In order to constitute an
attempt, it is essential that the defendant, with the intent of
committing the particular crime, shall have done some overt
act adapted to, approximating, and which in the ordinary likely
course of things would result in the commission thereof.  There-
fore the act must reach far enough toward the accomplishment
of the desired result to amount to the commencement of the
consummation.''

These criteria, which have the support of abundant judicial
authority (*People* v. *Murray,* 14 Cal. 160; *Hicks* v. *Common-*

*wealth,* 86 Va. 223, 19 Am. St. Rep. 891, 9 S. E. 1024; *Territory*
v. *Reuss,* 5 Mont. 605, 5 Pac. 885; *People* v. *Moran,* 123 N. Y.
254, 20 Am. St. Rep. 732, 10 L. R. A. 109, 25 N. E. 412; *Com-
monwealth* v. *Tolman,* 149 Mass. 229, 14 Am. St. Rep. 414, 3
L. R. A. 747, 21 N. E. 377, and note; *State* v. *Hurley,* 79 Vt.
28, 118 Am. St. Rep. 934, and note, 6 L. R. A. (n. s.) 804, 64
Atl. 78; note to *People* v. *Moran,* 20 Am. St. Rep. 741 *et seq.*),
are accepted by the Attorney General, but he insists that overt
acts, "appreciable fragments" of the offense designed, are
alleged. The information tells us very carefully what the appel-
lant did "in said attempt and toward the commission of said
offense," to-wit: He started to walk toward the home of Eliza-
beth Rains; he met her a short distance from her home, stopped
her, struck her in the face, and compelled her to return; he
forced her to enter her house and locked her in. All this was
very wrong, particularly if done with the intent at some time
to kill her, and for it he should be severely punished; but just
how the death of Elizabeth Rains could be compassed by any or
all of them, unless, after the manner of nations, he purposed
to blockade her there until she should starve to death—which
is not suggested—we are quite unable to see.

But it is said: "He armed himself with three deadly weapons,
to-wit, a loaded revolver, a loaded rifle, and a bottle of lauda-
num." The information states that he was so armed, but it
does not charge that all or any of this panoply of war was
actually used in any effort to accomplish the alleged design.
The worst that can be said of it is that there was preparation.
In *People* v. *Murray, supra,* the court, speaking through Mr.
Chief Justice Field, said: "The evidence in this case entirely
fails to sustain the charge against the defendant of an attempt
to contract an incestuous marriage with his niece. It only dis-
closes declarations of his determination to contract the mar-
riage, his elopement with the niece for that avowed purpose,
and his request to one of the witnesses to go for a magistrate
to perform the ceremony. It shows very clearly the intention
of the defendant, but something more than mere intention is

necessary to constitute the offense charged. Between prepara-
tion for the attempt and the attempt itself there is a wide dif-
ference. The preparation consists in devising or arranging the
means or measures necessary for the commission of the offense;
the attempt is the direct movement toward the commission after
the preparations are made. To illustrate: A party may pur-
chase and load a gun, with the declared intention to shoot his
neighbor; but, until some movement is made to use the weapon
upon the person of his intended victim, there is only prepara-
tion, and not an attempt. For the preparation he may be held
to keep the peace; but he is not chargeable with an attempt to
kill. So, in the present case, the declarations and elopement,
and request for a magistrate, were preparatory to the marriage;
but until the officer was engaged, and the parties stood before
him, ready to take the vows appropriate to the contract of mar-
riage, it cannot be said, in strictness, that the attempt was made.
The attempt contemplated by the statute must be manifested by
acts which would end in the consummation of the particular
offense, but for the intervention of circumstances independent
of the will of the party." And in *Hicks* v. *Commonwealth*, 86
Va. 223, 19 Am. St. Rep. 891, 9 S. E. 1024, which was a prosecu-
tion for attempt to murder by poison, wherein the defendant
procured the poison and ineffectually solicited another to ad-
minister it, the supreme court of Virginia remarks: "It has
been often held, under statutes similar to our own, that the pur-
chase of a gun with intent to commit murder, or the purchase
of poison with the same intent, does not constitute an indictable
offense, because the act done in either case is considered as only
in the nature of a preliminary preparation, and as not advan-
cing the conduct of the accused beyond the sphere of mere in-
tent." (See, also, *Stabler* v. *Commonwealth*, 95 Pa. 318, 40 Am.
Rep. 653; *Regina* v. *Williams*, 1 Car. & K. 589; *Cox* v. *People*,
82 Ill. 191.)

Singularly enough, when all the things alleged in the infor-
mation had been done and the preparation was complete, the
appellant took a water-pail and left the house to get some water,

and while he was gone the victim escaped through a window, "contrary to the form, force, and effect of the statute in such case made and provided, and against the peace and dignity of the state of Montana." Assuming this was sufficient to charge a frustration of the appellant's design within the authorities above cited, what, upon the whole information, was that design? Elizabeth Rains could die but once. Did the appellant intend to shoot her with the revolver, club her to death with the rifle, force the laudanum down her throat, or drown her in the water-pail? And if he intended any of these things, what act did he perform which would have accomplished the design, but for the interruption? The fact is, the details so painfully set forth are unrelated to each other, are mutually exclusive, are unconnected with any accomplishment of the main purpose.

It may be, as urged by the state, that, had these things been omitted, the information would have been sufficient; they, however, were not omitted, but the pleader, by inserting them, limited and characterized his general allegations, so as to make them clearly ineffectual.

Some contention is made that Elizabeth Rains was incompe-[2] tent to testify over the appellant's objection; but there is nothing in this. (Section 9483, Rev. Codes, as amended by Sess. Laws 1915, Chap. 111, p. 248.) .

The judgment and order appealed from are reversed and the cause is remanded, with directions to discharge the appellant, so far as the present information is concerned.

*Reversed and remanded.*

MR. JUSTICE HOLLOWAY concurs.

MR. CHIEF JUSTICE BRANTLY, being absent, did not hear the argument, and takes no part in the foregoing decision.