STATE, RESPONDENT, *v.* TRIPP, APPELLANT.

(No. 4,811.)

(Submitted June 4, 1921.　Decided June 27, 1921.)

[199 Pac. 716.]

*Criminal Law—Obtaining Money Under False Pretenses—Attempts—Evidence—Insufficiency.*

1. Evidence, in a prosecution for attempt to obtain money under false pretenses, showing no more than guilty intent in defendant and preparation to commit the offense charged, *held* insufficient to sustain a conviction.

*Appeals from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

CHARLES TRIPP was convicted of an attempt to obtain money by false pretenses, and appeals from the judgment of conviction and from an order overruling his motion for a new trial. Reversed and remanded.

*Mr. Kerr Beadle* and *Messrs. Canning & Geagan,* for Appellant, submitted a brief; *Mr. Beadle* argued the cause orally.

Citing: *State* v. *Rains,* 53 Mont. 424; *People* v. *Youngs,* 122 Mich. 292, 47 L. R. A. 108, 81 N. W. 114; *Cornwall* v. *Fraternal Accident Assn.,* 6 N. D. 201, 66 Am. St. Rep. 601, 40 L. R. A. 437, 69 N. W. 191; *United States* v. *Stephens,* 8 Sawy. 116, 12 Fed. 52; *State* v. *Hurley,* 79 Vt. 28, 118 Am. St. Rep. 934, 6 L. R. A. (n. s.) 804, 64 Atl. 78.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Foot* argued the cause orally.

In a case of this kind, it is extremely difficult to say just where preparation ends and overt acts begin. That question must be decided upon the facts of each individual case. 16 Corpus Juris, section 93, page 114, states as a general rule of law the following: "No definite rule applicable to all cases

can be laid down as to what constitutes an overt act or acts tending to accomplish a particular crime. Each case must depend largely upon its particular facts and the inferences which the jury may reasonably draw therefrom." "An overt act, essential to establish an attempt to commit a crime, is an act done to carry out the intention and it must be such as would naturally effect that result, unless prevented by some extraneous cause." (*People* v. *Mills,* 178 N. Y. 274, 67 L. R. A. 131, 70 N. E. 786.)

Appellant had completed every detail of the crime, except to take the complaining witness to the location of the kegs and get his money, and this he was prevented from doing by reason of his arrest, which was an interruption of his plans "by circumstances independent of the will of the attempter."

The actual transaction had been commenced, which would have ended in the crime, had it not been interrupted by the extraneous circumstance of the arrest of the appellant. (*People* v. *Grubb,* 24 Cal. App. 604, 141 Pac. 1051; *People* v. *Paluma,* 18 Cal. App. 131, 122 Pac. 431; *Ex parte Floyd,* 7 Cal. App. 588, 95 Pac. 175.) "The attempt to do an act does not, either in law or in common parlance, imply completion of the act or any definite progress toward it. Any effort or endeavor to effect it will satisfy the term of the law." (*United States* v. *Quincy,* 6 Pet. 445, 8 L. Ed. 458 [see, also, Rose's U. S. Notes] ; and see, also, *State* v. *Dumas,* 118 Minn. 776, 41 L. R. A. (n. s.) 439, 136 N. W. 311.)

MR. CHIEF COMMISSIONER POORMAN prepared the opinion for the court.

Appeals from a judgment entered on a verdict of guilty and from an order overruling the defendant's motion for a new trial.

The information filed in the cause charged the defendant with the crime of "an attempt to obtain money by false pretenses," and it is alleged that on the eighteenth day of October, 1920, the defendant, with intent to cheat and defraud

[60 Mont. 421.]

one Maurice Egan, represented to Egan that he (the defendant) was the owner of and had twenty-five gallons of ninety-nine proof whisky, when in truth and in fact the defendant did not have or own twenty-five gallons, or any number of gallons of any kind of whisky whatsoever; that defendant knew that said pretenses were false, and that by color and means of said false representations, or pretenses, defendant then and there knowingly, *etc.,* attempted to unlawfully obtain from said Maurice Egan the sum of $1,100.

It appears from the evidence that on the evening of October [1] 17, 1920, Maurice Egan met the defendant in the city of Butte, being then introduced to defendant by a third party and by agreement then made between the defendant and Egan, defendant was to sell and deliver to Egan twenty-five gallons of whisky, in two little kegs, for the sum of $1,100, the whisky to be tested, money paid, and delivery made on the following evening—that is, October 18, between Second and Front Streets, at about 7 o'clock. It was then agreed that the defendant and Egan would meet on the evening of October 18, and that the defendant would go with Egan to make the test of the liquor. On the evening of October 18, the defendant and the witness Egan met at the appointed time and place, and some further conversation was had between them concerning the whisky. Mr. Egan, in his testimony, says: "Mr. Tripp was going down with me. The two of us were going to walk down to where the whisky was in the wagon. The wagon was to be down there with the whisky. * * * Below the Milwaukee depot we were to meet and walk right close to the Milwaukee. I had no conversation with him as to what was to happen there, only we were to sample the whisky right there, and I was to receive it and give him his money." At this meeting it appears that Egan, who was "driving a buggy," proposed that they drive down to the whisky, but defendant said: "No; we will walk." Egan then went to unhitch his horse, and did not meet the defendant afterward; and we

gather from the evidence that the defendant was arrested at that time.

State's witness Brown testified that on the afternoon of October 18, 1920, he was employed by the defendant to go with the defendant to Nissler and get two of four kegs which defendant and the witness had theretofore placed there, which were dry, and leaking badly; that they filled two of the kegs with water, put a burlap sack around each keg, and "When I got near the Centennial Brewery the kegs were unloaded and left alongside of the road a short distance from the Centennial Brewery."

The defendant at that time had in his possession a brace and bit. Later, on the evening of the same date, the witness Brown went with the officers, took possession of the two kegs, which were found about a quarter of a mile west of Montana Street, and about twenty-five yards off the road. One of the kegs was of ten-gallon capacity, and one of fifteen-gallon capacity, both wrapped in burlap, and filled with colored water. This evidence does not show that defendant delivered the kegs at the place where the test was to be made, or that he went or started to go with Egan to the place of the test, or that he received any part of the consideration, or that he told Egan where he had left the kegs; and it is only by inference that it can be gathered that it was these particular kegs he intended to deliver to Egan. There is evidence that in July, 1920, at Livingston, Montana, the defendant had committed a similar offense in a similar manner, but this only goes to the question of intent. It appears from this evidence that, after making arrangements with the witness Egan to meet him on the following evening, the defendant and Egan did meet at the appointed time and place; but it appears that at the second meeting a new arrangement was made concerning where they were to go to make the test, and that they were to go to that place when Egan had put his horse and buggy away. Defendant did not accompany Egan any distance whatsoever, but remained there, apparently waiting for Egan to return. The

['60 Mont. 421.]

defendant made no move whatsoever after the final agreement relative to the place where the test was to be made.

The supreme court of this state, in *State* v. *Rains,* 53 Mont. 424, 164 Pac. 540, has so fully discussed this proposition that no good would be accomplished by any further discussion. In addition to the cases referred to in *State* v. *Rains,* we will cite the following: *People* v. *Youngs,* 122 Mich. 293, 47 L. R. A. 109, 81 N. W. 114; *People* v. *Petros,* 25 Cal. App. 236, 143 Pac. 246.

The meeting of Egan and the defendant on the evening of the 18th cannot be considered as having any greater significance than to show the completion of the preparations, rather than the commencement of the consummation. Guilty intent and preparation are shown in this record, and nothing beyond that point. The places referred to in the evidence—that is, Second and Front Streets Milwaukee depot, Centennial Brewery—may be places well known to the people residing there, but there is nothing in the record giving us any information as to the relative location of these places or the distance between them, except the statement that the kegs were found a quarter of a mile west of Montana Street.

In *State* v. *Phillips,* 36 Mont. 112, 92 Pac. 299, the question, aside from cautionary instructions considered by the court, was the sufficiency of the information. The information charged that the defendant falsely pretended to be the brother of Charles Phillips, and thereupon sent a telegram, *etc.* Two acts were charged in this information; the falsely pretending to be the brother of Charles Phillips and the sending of the telegram. While the information was somewhat indefinite and incomplete, the court sustained it.

In *State* v. *Taylor,* 47 Or. 455, 8 Ann. Cas. 627, 4 L. R. A. (n. s.) 417, 84 Pac. 82, the court held that the defendant in that cause was charged with the attempt to burn a barn. He engaged two other men to start the fire; he instructed them how to start a slow fire; furnished them with the material; paid them $100; furnished one of them a horse to ride

to the place; and the court held that the furnishing of the material for the fire and furnishing the horse and the payment of the money constituted overt acts on the part of the defendant, justifying his conviction. Both these cases are much stronger than the present case, and we believe it would be a dangerous rule to hold that the act of the defendant in this cause was an overt act amounting "to the commencement of the consummation."

We recommend that the judgment and order appealed from be reversed, and the cause remanded for a new trial.

PER CURIAM: For the reasons given in the foregoing opinion, the judgment and order are reversed, and the cause is remanded to the district court of Silver Bow county, with directions to grant the defendant a new trial.

*Reversed and remanded.*