No. 14644

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

_____

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JULIAN RIBERA,

Defendant and Appellant.

_____

Appeal from: District Court of the Twelfth Judicial District,
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Morrison, Ettien and Barron, Havre, Montana
Kathleen H. Richardson argued, Havre, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Chris D. Tweeten argued, Assistant Attorney General,
Helena, Montana
Ronald Smith, County Attorney, argued, Havre, Montana

_____

Submitted: June 4, 1979

Decided: JUL 18 1979

Filed: JUL 1 1979

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant, Julian Ribera, Jr., appeals from his conviction of one count of possession of dangerous drugs and one count of attempted sale of dangerous drugs following a nonjury trial in the District Court of the Twelfth Judicial District, Hill County, the Honorable B. W. Thomas presiding.

On February 24, 1978, James Owens, assistant principal of Havre High School, received a note from his secretary which she had just received from a student. The student had written the following description along with the last four digits of a license number on the paper:

"short dark-skinned blue coat
shoulder length hair beard & mustache.
                        peachy dark.
            3759"

The secretary wrote the following under the student's description:

"Mr. Owens--
     A student just informed me that he saw a
man trying to sell drugs to kids in the west
parking lot.
                        B.P."

Owens went to the doorway of the west foyer of the school where he could see the parking lot. He saw a man who fit the description on the note talking to some students. He also saw a car in the parking lot. The last four digits of the license matched those on the note.

Owens returned to his office and called the Havre Police Department. He identified himself, reported the incident, and asked that police be sent to the school. After reporting the incident he returned to the west foyer of the building and continued to watch.

After a short time the suspect got into the car along with two companions, and they drove away. Owens again

called the police to tell them the suspect was leaving in a car with two others. This information was relayed by radio to the two officers who were responding to the call.

The officers met the car along the way and stopped it. A pat-down search was made of defendant and five "Baggies" of what later proved to be marijuana were found in a pocket of his coat. The three were taken to the police station while one of the officers followed in their car.

At the station the police received the oral and written consent of the owner and driver of the car, Kenneth Berger, to search his car. The subsequent search yielded an additional five Baggies of marijuana which had been placed in a brown paper bag in the backseat.

Defendant's arrest and the subsequent search were accomplished without a warrant. He filed a motion to suppress as evidence at trial both the marijuana seized from his coat pockets and that seized from the backseat of Berger's car. Following an evidentiary hearing, the court entered findings of fact, conclusions of law and an order denying defendant's motion.

Defendant renewed his motion to suppress at trial and also moved for an acquittal on Count II charging him with attempted sale. This latter motion, which was also denied, alleged that the evidence presented by the State was insufficient to show a direct unequivocal act committed by defendant toward the commission of a sale. The State had presented three high school students as witnesses. Kathy Barlow testified: "He asked us if we wanted to buy a bag." She further testified that although defendant did not explain his meaning, she understood him to mean a bag of marijuana. He did not show her the marijuana. The testi-

mony of the other high school students was substantially similar. No one testified that they saw any marijuana at the school.

Defendant presents three issues for review which can be stated as follows:

1. Whether the arrest of defendant was supported by probable cause?

2. Whether the subsequently seized evidence was the fruit of an illegal arrest?

3. Whether defendant committed a direct unequivocal act sufficient to support his conviction of the crime of attempted sale of dangerous drugs?


PROBABLE CAUSE

Defendant argues that the officers did not have probable cause to stop the automobile in which defendant was riding because when Owens called the police, he did not identify the source of his information and the dispatcher asked him no questions.

The State responds by arguing that the police were informed of the "underlying circumstances" giving rise to Owens' tip to an extent sufficient to support a finding of probable cause.

Both parties cite Owens' testimony from the transcript of the suppression hearing regarding the information he gave the police during his first call:

> "I said I have information from one of my students that he was approached in the west parking lot to buy drugs. Here is the description of the individual. Here is the license number of the car. I just saw this individual out there. Ask you to get down here as fast as possible."

Officer Fisher, the dispatcher who received the call, gave somewhat less extensive testimony regarding this same exchange:

"Q. And can you state what Mr. Owens said to you? A. Yes. He told me that there was an older model car, white, sitting in the west parking lot of the high school selling drugs to kids.

". . .

"Q. Did you ask Mr. Owens any questions? A. No. He had the license number and he said he did. 12-3759. I gave that to them and they left.

"Q. And he gave you a description of the individual? A. Yes. The one that was selling the drugs was wearing a blue jacket. Long dark hair. Dark complected.

"Q. And did he advise you that the individual was selling drugs to him? A. No. To some kids.

"Q. And did he give any information about, to advise you of how he knew that? A. No." (Emphasis added.)

Included in Finding of Fact No. 1 is the following:

"He then returned to his office and called the Havre Police Department. He identified himself, reported the incident and asked that police be sent to the school. He then returned to the foyer . . ."

Finding of Fact No. 6 included the following:

"6. At the time the Berger car was stopped by officers Brown and Harada, personnel of the Havre Police Department possessed the following information:

". . .

"(c). Owens' report was based on information which he had received from a student."

Section 95-701, R.C.M. 1947, now section 46-5-101 MCA, provides in pertinent part that:

"A search of a person, object or place may be made and instruments, articles, or things may be seized in accordance with the provisions of this chapter when the search is made:

"(a) As an incident to a lawful arrest."

If the arresting officers did not have probable cause to stop the automobile, no evidence discovered as a result of a search of defendant can be used to justify the arrest. State v. Lahr (1977), ____ Mont. _____, 560 P.2d 527, 34 St.Rep. 90.

In State ex rel. Townsend v. Dist. Court (1975), 168 Mont. 357, 360-61, 543 P.2d 193, 195, this Court stated:

> "It cannot be disputed that hearsay information may be considered to establish probable cause. [Citations omitted.] But when hearsay information forms the justification for a finding of probable cause and the issuance of a search warrant, the two-pronged test set out in Aguilar v. Texas, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723, must be applied and satisfied:
>
> "'. . . the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, [citation omitted] was "credible" or his information "reliable."'"

The argument in the instant case centers on the first prong of this test: whether the officers who arrested defendant were "informed of some of the underlying circumstances from which the informant concluded [that defendant was selling drugs to students]." As previously outlined, the testimony varies on this point.

Our review of the record in this case does not establish a sufficient basis for finding that defendant's arrest was supported by probable cause. The testimony of the arresting officers, as well as the police dispatcher, reveals that they did not have sufficient knowledge of the underlying circumstances of Owens' tip to establish probable cause to arrest defendant.

In a situation where police officers expect to make a warrantless arrest, the arrest must be based on probable

cause. When that probable cause is based on a tip, springing from an informant's personal observation, the informant's reliability becomes significant. Where the reliability of the informant is assured, as in this case, but where his information is based on someone else's statements, the police must make some further inquiry of the informant regarding the underlying circumstances of his conclusion that it is probable that an offense is being or has been committed.

While Owens did not have to reveal to the police the identity of the student who gave him the note, the police should have asked Owens a few questions such as whether he knew the student, whether the student had been personally approached by the suspect or whether the student had overheard an offer or actually seen any drugs.

In view of the fact that Owens personally observed no conduct on the part of the suspect which could be classified as criminal conduct, this brief inquiry by the police would have reduced the possibility of a misunderstanding and satisfied certain minimum standards for establishing probable cause.

Without these additional facts establishing probable cause to arrest, the District Court should have suppressed the evidence seized as a result of the arrest, that being the contraband found on defendant's person. Mapp v. Ohio (1961), 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081, 1090. Defendant's conviction, therefore, is reversed, and the case is remanded for a new trial. We will address the two remaining issues, however, for the benefit of the District Court.

SUBSEQUENTLY SEIZED EVIDENCE

Defendant argues that the marijuana seized from Berger's car should have been suppressed under the "fruit of the poisonous tree" doctrine, as having been discovered as a result of defendant's "illegal" arrest.

The State answers this contention with two arguments. First, the State contends that defendant has not established that the search invaded defendant's Fourth Amendment rights. Second, the State contends that the search of Berger's car was not the fruit of an illegal arrest within the meaning of Wong Sun v. United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.

The District Court made a specific conclusion of law with respect to this issue:

> "7.  The search of the Berger car was legally made pursuant to the valid consent of the owner of the car.  In any event, defendant is without standing to challenge that search."

Addressing first the question of defendant's standing to challenge the search of Berger's car, we find that he was without standing to challenge the search.  The State places great emphasis on a recent United States Supreme Court case in support of the position that defendant lacks standing to object to this search.

In Rakas v. Illinois (1978), ____ U.S. _____, 99 S.Ct. 421, 58 L.Ed.2d 387, the Supreme Court examined the rule of standing enunciated in Jones v. United States (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697:

> "In Jones, the Court set forth two alternative holdings:  it established a rule of 'automatic' standing to contest an allegedly illegal search where the same possession needed to establish standing is an essential element of the offense charged; and second, it stated that 'anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress.'  362 U.S. at 264, 267."  Rakas, ____ U.S. at ___, 99 S.Ct. at 426, 58 L.Ed.2d at 395-96.

Though the Court in Rakas apparently restricted the application of the second alternative holding in Jones, it went on to explain at Footnote No.4 that:

> "We have not yet had occasion to decide whether the automatic standing rule of Jones survives our decision in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). See Brown v. United States, 411 U.S. 223, 228-229, 93 S.Ct. 1565, 1568-1569, 36 L.Ed.2d 208 (1973). Such a rule is, of course, one which may allow a defendant to assert the Fourth Amendment rights of another."

In Brown, 411 U.S. at 228, 93 S.Ct. at 1569, 36 L.Ed.2d at 213, the Supreme Court had stated:

> ". . . under the Simmons doctrine the defendant is permitted to establish the requisite standing by claiming 'possession' of incriminating evidence. If he is granted standing on the basis of such evidence, he may then nonetheless press for its exclusion; but, whether he succeeds or fails to suppress the evidence, his testimony on that score is not directly admissible against him in the trial. Thus, petitioners in this case could have asserted, at the pretrial suppression hearing, a possessory interest in the goods at Knuckle's store without any danger of incriminating themselves. They did not do so.
>
> "But it is not necessary for us now to determine whether our decision in Simmons, supra, makes Jones' 'automatic' standing unnecessary. We reserve that question for a case where possession at the time of the contested search and seizure is 'an essential element of the offense . . . charged.'"

We now determine whether the search of Berger's car, conducted pursuant to his consent, violated the Fourth Amendment as the "fruit of the poisonous tree" under Wong Sun v. United States (1963), 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441. In Wong Sun, the Supreme Court held the "poisonous tree" rule applicable to the evidentiary fruits of unconstitutional arrests. The Court went on, though, to indicate that the taint of initial illegality may be purged:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions

of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun, 371 U.S. at 487-88.

Thus, under Wong Sun, two questions must be answered: (1) Was the arrest a cause-in-fact of the later discovery of evidence; and (2) if so, was there an intervening cause or event sufficient to attenuate the taint of the illegal arrest?

It is clear that a showing of "voluntariness" on Berger's part is not sufficient to attenuate the taint. See Schneckloth v. Bustamonte (1973), 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854. Rather, adopting the rationale of Brown v. Illinois (1975), 422 U.S. 590, 598-99, 95 S.Ct. 2254, 45 L.Ed.2d 416, the State must show that Berger's consent was "sufficiently an act of free will to purge the primary taint." While this is an admittedly heavy burden, there is sufficient evidence in the record of the instant case to find that the State has met it.

Berger, the party who gave consent, testified that his consent was voluntary and uncoerced. Moreover, Berger testified that he was unaware that any drugs were in the car and that he therefore had no reason to deny consent. He expected the search of his car to establish his innocence and gave his consent with that in mind. Finally, three factors combine in the instant case to establish that Berger's consent was "sufficiently an act of free will to purge the taint." First, there is an absence of any evidence of any threats, promises, or coercion by police officers. Second, there is evidence that Berger's consent was knowing, in that he was advised of his right to refuse to

-10-

give his consent. Third, Berger had thought he had every-
thing to gain from the search of his car since to his knowl-
edge the search would yield no drugs and thus advance his
ultimate vindication.


OVERT ACT REQUIREMENT

Defendant argues that mere conversation is not a direct
unequivocal act directed toward the commission of the of-
fense sufficient to sustain a conviction for attempted sale
of dangerous drugs. Furthermore, he argues that an overt
act must go far enough toward the accomplishment of the
offense to amount to commencement of its consummation.
Since defendant never displayed any marijuana to any of the
three students he offered to sell a "bag" to, he argues that
at no time did he have the "apparent ability" to complete a
sale.

The State contends that defendant's actions were more
than mere acts of preparation, rather they were acts of
perpetration. The only thing standing between defendant and
a completed sale was his inability to find a willing buyer.

Section 94-4-103, R.C.M. 1947, now section 45-4-103
MCA, provides:

> "A person commits the offense of attempt, when,
> with the purpose to commit a specific offense,
> he does any act towards the commission of such
> offense."

This Court has stated than an overt act "must reach far
enough toward the accomplishment of the desired result to
amount to the commencement of the consummation." In addi-
tion, the Court stated that "there must be some appreciable
fragment of the crime committed, and it must be in such
progress that it will be consummated unless interrupted by

circumstances independent of the will of the attempter."
State v. Rains (1917), 53 Mont. 424, 164 P. 540.

In this case it is clear that defendant intended to make a sale of drugs. He made offers to three students and had the drugs in his possession at the time of the offers. Further, testimony indicated that defendant was traveling from Chinook to Sidney when the side trip to Havre was taken. The extraordinary trip, approaching students and making verbal offers to sell drugs are sufficient acts to constitute the crime of attempt consistent with the rationale of State v. Rains, supra.

The case is reversed and remanded for further proceedings consistent with this opinion.

_____
                Justice

We concur:

_____
        Chief Justice

_____

_____
        Justices

_____
Honorable W. W. Lessley, District Judge, sitting in place of Mr. Justice Sheehy