No. 93-501

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

      Plaintiff and Respondent,

  -v-

CHRIS MAHONEY,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Maurice R. Colberg, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Chris Mahoney, Deer Lodge, Montana, pro se

      For Respondent:

      Brent Brooks, Deputy Yellowstone County Attorney;
Hon. Joseph P. Mazurek, Attorney General, Cregg
Coughlin, Assistant Attorney General, Helena,
Montana

Submitted on Briefs: January 7, 1994

Decided: March 3, 1994

Filed: MAR 3 - 1994

FILED

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

Chris Mahoney appeals an order of the District Court of the Thirteenth Judicial District, Yellowstone County, denying his motion to withdraw his guilty plea. We affirm.

The issue on appeal is whether the District Court abused its discretion when it denied defendant's motion to withdraw his guilty plea.

## BACKGROUND

On or about May 29, 1989, at approximately 7:00 p.m., Chris Mahoney went to a Town Pump in Billings where Beth Brandt was working the night shift. Having previously purchased a soft drink and having left the store, he returned at about 8:30 p.m. and engaged Ms. Brandt in conversation. Mahoney was in the store about 9:00 p.m., closing time, when Ms. Brandt asked him to leave so she could close the store. Mahoney walked out of the store followed by Ms. Brandt who then hung up a "closed" sign near the door. She walked back inside through the door, and, as she turned to lock the door from the inside, the defendant pushed it open, pushing Ms. Brandt away from the door in the process. He demanded she lock the door, and then prevented her attempts to leave through the door.

Ms. Brandt attempted to scream, but Mahoney covered her mouth with his hand and forced her to the floor near the cash register. As she struggled, the defendant kept telling her to lock the door. He forced her into a squatting position facing away from him on the floor. Mahoney then produced a knife from his coat and began stabbing her. After stabbing her repeatedly and in that process

2

severely lacerating her neck, exposing her carotid artery, he restrained her, forcibly, partially disrobed her and, "... still dressed, began to rub his penis up and down against the back of the victim's hands as she held them in front of her genitals."

When he saw a large amount of blood from her wounds, he stopped his actions, went around the checkout counter and called the Billings police, reporting that he had cut a clerk and that an ambulance was needed. According to the affidavits in support of the information and amended information subsequently filed, when the police arrived at the scene, Mahoney was cooperative, Miranda warnings were read, and he provided a factual account of the incident.

Mahoney was brought before the Thirteenth Judicial District Court on June 1, 1989, without counsel and in the custody of a deputy sheriff. The County Attorney made and filed a motion, supported by affidavit, for leave to file the information against Mahoney charging him with aggravated assault. Leave was granted by the court to file the information; a copy of the information, motion and affidavit was given to Mahoney; counsel was appointed; and the arraignment was continued to June 8, 1989. On June 9, 1989, on defense counsel's motion, the court continued the arraignment again, pending Mahoney receiving a psychiatric evaluation.

The State filed a motion and affidavit for leave to file an amended information on July 12, 1989, and gave notice to defense counsel. Mahoney and his counsel appeared before the District

Court on July 13, 1989, and the State's motion to amend the information was granted. The amended information charged Mahoney with attempted deliberate homicide and attempted sexual intercourse without consent. Mahoney pled not guilty to the offenses at that time. A psychiatric evaluation was ordered on July 17, 1989, and a report of that evaluation was subsequently filed with the District Court.

On October 18, 1989, a proceeding was held in which Mahoney, represented by counsel, withdrew his plea of not guilty and entered a plea of guilty to the offenses charged. Mahoney was interrogated by the District Court Judge about his understanding of the consequences of his guilty plea, and he was questioned about his understanding of the "Acknowledgement of Waiver of Rights by Plea of Guilty," which he had read, discussed with his attorney and signed. The District Court concluded that Mahoney's change of plea was knowingly and voluntarily made and accepted his plea of guilty. There was no plea agreement.

After a presentence report was filed, Mahoney appeared with counsel and was sentenced on November 22, 1989, to 40 years in the State Prison for the crime of attempted deliberate homicide, 18 years for the crime of attempted sexual intercourse without consent and an additional eight years for the use of a weapon. The sentences were ordered to be served consecutively, Mahoney was designated a dangerous offender and conditions were imposed in the event of his parole.

4

Mahoney subsequently filed a motion to withdraw his guilty plea on July 10, 1992. The District Court denied his motion on June 29, 1993, and Mahoney's notice of appeal was filed on August 26, 1993.

## DISCUSSION

In reviewing cases involving a trial court's refusal to allow a defendant to withdraw a plea of guilty, this Court will determine whether the trial court abused its discretion. State v. Reynolds (1992), 253 Mont. 386, 390, 833 P.2d 153, 155.

Section 46-16-105(2), MCA (1991), states that a court may permit a guilty plea to be withdrawn and a non-guilty plea substituted, for good cause, at any time before or after judgment. The following three factors are considered by this Court when determining whether a district court erred in refusing to allow the defendant to withdraw his guilty plea:

> 1. The adequacy of the District Court's interrogation at the time the plea was entered as to the defendant's understanding of the consequences of his plea;
>
> 2. the promptness with which the defendant attempts to withdraw the prior plea; and
>
> 3. the fact that the defendant's plea was the result of a plea bargain.

State v. Walter (1986), 220 Mont. 70, 72, 712 P.2d 1348, 1350. As to the first factor, we determine that the District Court's interrogation as to Mahoney's understanding of the consequences of his plea was adequate. A judge's interrogation of a defendant seeking to enter a guilty plea is sufficient if the judge:

> ". . . examines the defendant, finds him to be competent, and determines from him that his plea of guilty is

5

voluntary, he understands the charge and his possible punishment, he is not acting under the influence of drugs or alcohol, he admits his counsel is competent and he has been well advised, and he declares in open court the fact upon which his guilt is based."

Walter, 712 P.2d at 1350, citing State v. Lewis (1978), 177 Mont. 474, 485, 582 P.2d 346, 352. A review of the record indicates that Mahoney was sufficiently interrogated by the judge at the change of plea proceeding. The questioning met all the requirements listed above, including a recitation of the facts upon which his guilt is based.

Additionally, Mahoney was questioned by the district judge as to his understanding of the "Acknowledgement of Waiver of Rights by Plea of Guilty" document. He stated that he discussed the document's contents with his attorney, read the document, filled in the appropriate blanks and signed the document. This Court has previously held that a written acknowledgement, combined with oral questioning of the defendant, constitutes adequate interrogation. Walter, 712 P.2d at 1350.

As to the second factor, Mahoney filed his motion to withdraw his guilty plea more than two and one half years after he was sentenced. The State persuasively argues that the District Court was correct in its determination that Mahoney's motion to withdraw his guilty plea was untimely. "In general, filing [a] motion to withdraw a guilty plea over a year after entry of the guilty plea is untimely." State v. Reynolds (1992), 253 Mont. 386, 391, 833 P.2d 153, 156. (Citation omitted.) However, without ruling on the timeliness of defendant's motion and in view of the seriousness of

6

the crimes to which the defendant pled guilty and the fact that the issue raised regarding the abandonment of his attempts to commit those crimes is one of first impression in Montana, we will proceed to discuss and to decide this case on the substantive issues.

The third and final factor, whether the defendant's guilty plea was the result of a plea bargain, is not an issue because in this case, there was no plea bargain.

Mahoney presents three arguments in support of his contention that his plea of guilty should be withdrawn: 1) prosecutorial vindictiveness, 2) he could not be guilty of the crimes charged, and 3) ineffective assistance of counsel. We discuss these arguments in turn.

## 1. PROSECUTORIAL VINDICTIVENESS

First, Mahoney states that the State was impermissibly vindictive when it increased the charges from aggravated assault to attempted homicide and attempted sexual intercourse without consent. He asserts that the amended information was based on the same available evidence cited in the original information.

The State cites State v. Hilton (1979), 183 Mont. 13, 18, 597 P.2d 1171, 1174, for its contention that, since he pled guilty to the offenses charged, Mahoney cannot now be heard to complain about any issue, save the voluntariness of his plea. We agree. Hilton states that "[o]nce a defendant properly pleads guilty he waives all factual defenses as well as constitutional violations which occur prior to the plea." Hilton, 597 P.2d at 1174. On pleading guilty, the defendant may only attack the voluntariness and knowing

7

character of the plea. Hilton, 597 P.2d at 1174. Therefore, given the defendant's voluntary and knowing plea of guilty, there is merit to the State's argument that Mahoney has waived his claims of prosecutorial vindictiveness.

Moreover, the State having strictly followed the statutory procedure for amending the information early in the case and before he entered a plea to the original information militates against Mahoney's claim of prosecutorial vindictiveness. Section 46-11-403, MCA (1987), which was the statute in effect at the time the prosecutor filed his motion to amend the information, sets forth the procedural requirements for amending an information in matters of substance. The statute authorizes such an amendment with leave of court at any time not less than five days before trial.

In moving to amend the information, the State complied in all respects with the procedural requirements of § 46-11-403, MCA (1987), and the District Court properly granted the State leave to amend. The affidavit supporting the amended information contains a more detailed account of the incident than the account provided in the original affidavit and states facts that show the existence of probable cause to support the charges of attempted deliberate homicide and attempted sexual intercourse without consent.

"When the facts of a case support a possible charge of more than one crime, the crime to be charged is a matter of prosecutorial discretion." (Emphasis added.) State v. Booke (1978), 178 Mont. 225, 230, 583 P.2d 405, 408. See also § 46-11-404(1), MCA (1987).

8

Furthermore, we find no support in the record for any charge of prosecutorial vindictiveness; the prosecutor merely exercised the discretion which the law provides and amended the information in accordance with the procedural requirements provided by statute to charge crimes for which there was clearly probable cause. While that is all that is required, here, it is also clear that the defendant was at all time represented by counsel; that he was given notice of the State's intention to amend; that no objection was raised to the prosecutor's motion at the time it was made or granted; and that the motion was made and granted very early in the case before the defendant entered a plea to the original information and before a trial date was even set.

Had Mahoney any legitimate concerns about the charges being filed as a result of prosecutorial vindictiveness, he had more than adequate opportunity to raise those before pleading guilty to the amended information. Not only did Mahoney waive his right to contest the amendment of the information by failing to object and by pleading guilty, but, and just as importantly, the amendment of the information was accomplished in accordance with the law, and there is no indication in the record of any improper motivation by the State.

We conclude that Mahoney has failed to establish that the charges to which he pled guilty were filed as a result of prosecutorial vindictiveness.

## 2. VOLUNTARY ABANDONMENT OF THE CRIMES CHARGED

9

Second, Mahoney argues that he could not be found guilty of the crimes charged because he voluntarily abandoned his criminal efforts. The Montana "attempt" statute in effect when Mahoney pled guilty provides that, "[a] person commits the offense of attempt when, with the purpose to commit a specific offense, he does any act towards the commission of such offense." (Emphasis added.) Section 45-4-103(1), MCA (1987). State v. Ribera (1979), 183 Mont. 1, 11, 597 P.2d 1164, 1170. Further:

> This Court has stated that an overt act 'must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation.' In addition, the Court stated that 'there must be at least some appreciable fragment of the crime committed, and it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter.'

Ribera, 597 P.2d at 1170, citing State v. Rains (1917), 53 Mont. 424, 164 P. 540.

In this case, Mahoney accosted Ms. Brandt, prevented her escape from the store and then stabbed his struggling victim twelve times, causing serious injuries, including damage to her lungs, liver and kidneys. It can hardly be argued that this is not "at least some appreciable fragment of the crime [of deliberate homicide] committed [and that his actions reached] far enough towards the accomplishment of the desired result to amount to the commencement of the consummation." Ribera, 597 P.2d at 1170.

Moreover, Mahoney forcibly pulled down Ms. Brandt's pants, lifted her shirt up, cut her bra straps and attempted to have sexual intercourse with her. Notwithstanding that she was seriously wounded from the stabbing, Ms. Brandt resisted the

10

defendant's attack by holding her hands in front of her genitals to prevent him from having sexual intercourse. Mahoney himself stated in the proceeding to change his plea to guilty that his intent was to have sexual intercourse with the victim. These actions by Mahoney likewise unequivocally established that at least some fragment of the crime of sexual intercourse without consent was committed and that such actions reached far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. Ribera, 597 P.2d at 1170.

There is no doubt from the conduct of the defendant in this case that, with the purpose to commit the crimes of deliberate homicide and sexual intercourse without consent, he did "... act[s] toward the commission of such offense[s]." Section 45-4-103(1), MCA (1987).

However, Subsection (4) of § 45-4-103, MCA (1987), provides a defense to the offense of attempt. It is on this defense which Mahoney relies for his claim that he could not be found guilty of the crimes to which he pled guilty. Section 45-4-103(4), MCA (1987), provides that:

> A person shall not be liable under this section if, under circumstances manifesting a voluntary and complete renunciation of his criminal purpose, he avoided the commission of the offense attempted by abandoning his criminal effort.

Mahoney offers his telephone call to the police as evidence that he voluntarily and completely renounced his criminal purpose by abandoning his efforts to commit deliberate homicide and sexual intercourse without consent.

11

The amended information discloses that after preventing her escape from the store and after stabbing the victim numerous times, Mahoney forcibly tried to disrobe the struggling Ms. Brandt, and "then began to rub his penis up and down against the back of the victim's hands as she held them in front of her genitals. When he saw a large amount of blood from her wounds he stopped, went around the checkout counter and called Billings police."

We are assisted in answering the question of whether Mahoney voluntarily and completely renounced his criminal purpose and abandoned his criminal effort by the decision of a sister state which has extensively explored this issue.

The State of Michigan recognizes the affirmative defense of voluntary abandonment but qualifies the definition of voluntary abandonment, stating:

> Abandonment is not 'voluntary' when the defendant fails to complete the attempted crime because of unanticipated difficulties, unexpected resistance, or circumstances which increase the probability of detention or apprehension. (Emphasis added.)

People v. McNeal (Mich.App. 1986), 393 N.W.2d 907, 912, citing People v. Kimball (Mich.App. 1981), 311 N.W.2d 343, 349. The defendant in Kimball was charged with and convicted of attempted unarmed robbery. He argued that he voluntarily abandoned his criminal enterprise before the crime was consummated; therefore, he could not be found guilty of attempt.

The Kimball court concluded that voluntary abandonment was a defense to a prosecution for criminal attempt (see § 45-4-103(4), MCA.). Kimball, 311 N.W.2d at 349. However, the court stated

12

emphatically, that abandonment was not "voluntary" when the criminal endeavor was not completed because of unanticipated difficulties or unexpected resistance. Kimball, 311 N.W.2d at 349. Although Michigan's attempt statute differs from ours, we agree with the approach set forth in Kimball.

In arriving at its conclusion that voluntary abandonment is a defense to a criminal attempt, the Kimball court extensively reviewed authoritative commentary on criminal attempt law, citing Perkins, Criminal Law (2d ed), ch. 6, § 3, p.590, among others. Perkins states that "although a criminal plan has proceeded far enough to support a conviction of criminal attempt, it would be sound to recognize the possibility of a *locus penitentiae* so long as no substantial harm has been done and no act of actual danger committed." Kimball, 311 N.W.2d at 347. (Underlined emphasis added.) Perkins prefaces the above cited statement in his treatise on criminal law, by commenting that there are limitations to the use of abandonment as a defense to the crime of attempt. "Attempted murder cannot be purged after the victim has been wounded, no matter what may cause the plan to be abandoned." "Perkins" at 590.

We agree with Perkins' logic, particularly in this case, where the defendant prevented the victim's escape, stabbed her twelve times causing grievous injury and then tried to forcibly rape her. At this point, substantial harm had been done and acts of actual danger had, indeed, been committed. Moreover, Mahoney's actions

13

represent at least "some appreciable fragment of the crime [to be] committed." Ribera, 597 P.2d at 1170.

Nor did Mahoney voluntarily and completely renounce his criminal purpose by abandoning his attempt to commit the crimes of deliberate homicide and sexual intercourse without consent, as required by § 45-4-103, MCA (1987). Even after the victim had been repeatedly stabbed, she was able to thwart the defendant's attack by holding her hands over her genitals, trying to prevent him from engaging in sexual intercourse with her. As stated in Kimball and McNeal, an abandonment is not voluntary if the defendant fails to complete the crime because of "unanticipated difficulties [or] unexpected resistance." Kimball, 311 N.W.2d at 349; McNeal, 393 N.W.2d at 912.

Mahoney did not abandon his criminal conduct until he met with unanticipated difficulties and unexpected resistance. He only called the police after observing that the victim was bleeding profusely from the wounds which he inflicted and because she struggled and successfully protected herself from being raped. Mahoney's conduct is not a manifestation of voluntary and complete renunciation of criminal purpose and an abandonment of criminal effort. That he did not actually consummate the crimes of sexual intercourse without consent and deliberate homicide was due not to any voluntary renunciation of criminal purpose on his part but to good fortune that the victim was not killed by the stabbing and the simple fact that circumstances occasioned by his brutal attack and the victim's continued resistance made further criminal effort

14

impracticable. Mahoney's self-serving and conclusory arguments to the contrary exalt form over substance.

Under the test enunciated above, i.e. that there is no voluntary and complete renunciation of criminal purpose and abandonment of criminal effort, where substantial harm has been done and acts of actual danger have been committed, or where the defendant fails to complete the attempted crime because of unanticipated difficulties, unexpected resistance or circumstances which increase the probability of detention or apprehension; under § 45-4-103(1) and (4), MCA (1987), and our prior case law; and under the facts of this case, we conclude that Mahoney committed the offenses of attempted deliberate homicide and attempted sexual intercourse without consent and that he has failed to establish his abandonment defense. Accordingly, Mahoney's argument that he could not have been found guilty of the crimes of attempted deliberate homicide and attempted sexual intercourse without consent to which he pled guilty is without merit.

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, Mahoney argues that he received ineffective assistance of counsel. To determine whether a defendant received ineffective assistance of counsel, the court must conduct the two-part Strickland test, adopted by this Court in State v. Robbins (1985), 218 Mont. 107, 114, 708 P.2d 227, 232. In that case we stated:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by

15

> the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Robbins, 708 P.2d at 232, citing Strickland v. Washington (1985), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. If the issue is a defendant's guilty plea, the defendant must demonstrate that but for counsel's deficient performance, a defendant would not have entered a guilty plea. State v. Senn (1990), 244 Mont. 56, 59, 795 P.2d 973, 975.

Mahoney asserts that his attorney did not inform him that the State must provide the defendant access to a competent psychiatrist "who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." Ake v. Oklahoma (1985), 470 U.S. 68, 83, 105 S.Ct. 1087, 84 L.Ed.2d 53. Such advice is mandated only where the defendant has demonstrated to the court that his sanity at the time of the offenses committed will be a "significant factor at trial." Ake, 470 U.S. at 83.

However, defendant's counsel did consider a defense of mental impairment but concluded there was no basis upon which to pursue such a defense. A psychiatric evaluation was conducted at Warm Springs State Hospital, which revealed no evidence of any mental disease or defect. Defense counsel's considered decision to forego a defense of mental disease or defect, therefore, was not an error at all much less an error "... so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Robbins, 708 P.2d a 232.

16

Neither can Mahoney demonstrate, as he claims, that his counsel failed to inform him that he would not be convicted of "attempted" homicide and sexual assault because he "abandoned his criminal efforts before consummation." This argument is without merit. We have already discussed the "attempted" felonies, concluding that Mahoney did not voluntarily abandon his criminal efforts before consummation. Therefore, it was not error or incompetence for Mahoney's counsel to fail to inform him that it was impossible for him to be convicted of the two felony "attempts" to which he pled guilty.

Mahoney further argues that his counsel should have sought to dismiss the increased charges brought in the amended information because they were the result of "prosecutorial vindictiveness." We dispensed with Mahoney's argument concerning "prosecutorial vindictiveness" in the first section of this opinion. We stated that under § 46-11-403, MCA (1987), the prosecution could amend the information to charge crimes for which there was probable cause up to five days before trial if the motion to amend was filed in accordance with the procedural requirements of the statute. Here, the State filed a proper motion to amend and therefore, Mahoney's counsel had no reason to dispute the amended information on the ground of "prosecutorial vindictiveness."

Moreover, Mahoney stated at his hearing to change his plea from not guilty to guilty, that he was satisfied with the services and advice given by his counsel in the matter. Additionally, he signed an Acknowledgement of Waiver of Rights, which states that "I

17

am satisfied that my lawyer has been fair to me and has represented me properly."

Finally, since defense counsel's performance was not deficient, his performance could not have prejudiced the defense. In the face of the record in this case and our discussion above, Mahoney's claims of ineffective assistance of counsel are without merit. We conclude that Mahoney cannot meet either prong of the Strickland test and, therefore, has not demonstrated that his counsel's assistance was ineffective.

Having reviewed the record and having disposed of Mahoney's claims and arguments, we hold that the District Court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

18

March 3, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Chris Mahoney
700 Conley Lake Road
Deer Lodge, MT 59722

Brent Brooks
Deputy County Attorney
P. O. Box 35025
Billings, MT 59107

Hon. Joseph P. Mazurek, Attorney General
Cregg Coughlin, Assistant
Justice Building
Helena, MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy